# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

RYDER TRUCK RENTAL, INC.,

    Plaintiff,

    v.

KNIGHT SPECIALTY INSURANCE COMPANY,

    Defendants.

Civil Action No.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Ryder Truck Rental, Inc. ("Ryder"), by and through its undersigned attorneys, states the following in support of its complaint for a declaratory judgment:

## NATURE OF THE ACTION

1. Ryder files this action for declaratory judgment, breach of contract and other relief against Knight Specialty Insurance Company ("Knight Specialty") under a commercial auto liability policy (No. NTKS0000016-00) Knight Specialty issued to Southcentral Lanes, LLC, under which Ryder qualifies as an insured. A true and accurate copy of the Knight Specialty Policy is annexed hereto as **Exhibit 1.**

2. In particular, Ryder seeks declaratory judgments that: (i) Knight Specialty breached its duty to defend Ryder for the underlying lawsuit captioned *Cabrera-Perez v. Quevedo-Fernandez, et al.*, Case No. 2023-022623-CA-30, pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade Country (the "Lawsuit"); (ii) Knight Specialty breached its duty to indemnify Ryder for the settlement of the Lawsuit, and (iii) Knight Specialty is estopped from disputing that it breached its duties to defend and indemnify Ryder.

3.      Ryder seeks damages for Knight Specialty's breach of its duties to defend and indemnify Ryder for the Lawsuit and to settle the Lawsuit on Ryder's behalf pursuant to Knight Specialty's obligations under the Knight Specialty Policy.

## THE PARTIES

4.      Ryder is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Coral Gables, Florida.

5.      Defendant Knight Specialty is a corporation organized under the laws of Delaware, with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

6.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, for the purposes of determining a question of actual controversy between the parties as is more fully set forth herein.

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

8.      The Court has jurisdiction over Knight Specialty because it is a foreign corporation that is eligible to and actively conducts the business of issuing insurance policies in Florida.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims at issue occurred in this District.

## FACTUAL ALLEGATIONS

### The Lease & Rental Documents

10.     On or about January 15, 2018, Ryder and Southcentral Lanes entered into a Truck Lease and Service Agreement ("TLSA"). Pursuant to the terms of the TLSA, the "lease term for each Vehicle begins when the Vehicle is placed in

Customer's service, or 48 hours after notice has been given by Ryder to Customer that the Vehicle is available for pickup, whichever occurs first …"

11. The TLSA's Liability Insurance provision states in relevant part as follows:

> **Liability Insurance.** The party designated on Schedule A (the "Insuring Party") agrees to furnish and maintain, at its sole cost, a policy of automobile liability insurance with limits specified on each Schedule A for death, bodily injury and property damage, covering both you and Ryder as insureds for the ownership, maintenance, use and operation of each Vehicle ("Liability Insurance"). If you are the Insuring Party, the terms of the policy and the insurer must be acceptable to Ryder. The Liability Insurance must provide that its coverage is primary and not additional or excess coverage over insurance otherwise available to either party, must be equal in scope in all respects to the insurance coverage provided to you, and must include any and all statutory requirements of insurance imposed upon you and for Ryder… The Insuring Party agrees to designate the other party as an additional insured on the Liability Insurance and to provide the other party with insurance certificates evidencing the required coverage. Your certificate of insurance must include by special endorsement or otherwise, Ryder as an additional insured for all vehicles leased, rented, substituted or supplied to you by Ryder.

12. On or about September 23, 2019, Ryder and GEMS Transfer, LLC ("GEMS") entered into Truck Lease & Service Agreement (TLSA) Schedule A with respect to ten vehicles, including Ryder Unit No. 860922 (VIN 3HSDZAPR1KN354404) (the "Leased Unit"). The Schedule A's Liability Insurance provision listed Ryder as the insuring party.

13. On November 13, 2020, Ryder sent a letter to GEMS and Southcentral Lanes, among others, advising them that, consistent with prior notices, Ryder was

51078022.v1

discontinuing its Lease Liability Extension Program, and that the program would terminate effective December 1, 2020.

14. Consistent with the foregoing, on November 30, 2020, Ryder received an email advising that Ryder's leased units had been insured under a commercial auto liability policies issued to AZPI Transportation, and that Ryder's leased units would be added to a policy issued to Southcentral Lanes, once that insurance policy was bound.

15. The November 30, 2020 email attached a Certificate of Liability Insurance that advised Ryder that, effective November 30, 2020, the Leased Unit was insured under Sentry Select Insurance Company Policy No. A0130480001.

16. Consistent with the foregoing, on or about December 2, 2020, Ryder and GEMS entered into an Amendment to Schedule A(s), which amended the Schedule A's Liability Insurance provision to require GEMS to provide insurance for the Ryder leased vehicles.

17. The Amendment to Schedule A listed the Leased Unit as requiring GEMS to maintain insurance for the unit.

18. On December 4, 2020, Ryder issued Ryder Unit No. 704460, a 2016 Volvo tractor (VIN 4V4NC9EHXGN92350) (the "Temporary Substitute Unit"), as a temporary substitute auto for the Leased Unit, which required maintenance.

19. Consistent with the foregoing, on December 7, 2020, Ryder received an email acknowledging that as of December 1, 2020, the Ryder leased vehicles were no longer insured under Ryder's insurance, that they now would be insured under Southcentral Lanes' insurance, and that Ryder would no longer charge for the insurance costs related to the leased vehicles.

20. Consistent with the foregoing, on December 7, 2020, GEMS, Southcentral Lanes and Ryder entered into an Assignment Truck Lease and Service Agreement (TLSA Transfer).  Annexed hereto as **Exhibit 1** is a true and accurate copy of the Knight Specialty Policy.

21. Under the Assignment/Transfer Agreement, GEMS transferred several vehicles, including the Leased Unit, to Southcentral Lanes, and Southcentral Lanes assumed all of the obligations and liabilities imposed upon it as a result of the assignment and transfer to the Southcentral Lanes' TLSA. Annexed hereto as Exhibit 1 is a true and accurate copy of the "Assignment of Truck Lease And Service Agreement (TLSA Transfer)."

22. Under the Assignment/Transfer Agreement, Southcentral Lanes took possession of the assigned vehicles, including the Leased Unit and Temporary Substitute Unit, on December 7, 2020.

23. Consistent with the foregoing, on December 10, 2020, Ryder received an email attaching a Certificate of Liability Insurance and an insurance card that advised Ryder that, effective December 7, 2020, the Leased Unit was insured under the Knight Specialty Policy.

**The Knight Specialty Policy**

24. Knight Specialty issued the Knight Specialty Policy to Southcentral Lanes, LLC for the period December 7, 2020 to December 7, 2021. Annexed hereto as **Exhibit 2** is a true and accurate copy of the Knight Specialty Policy.

25. Subject to its terms, conditions, exclusions, and limitations, the Knight Specialty Policy provides commercial auto liability coverage with limits of $1 million per accident.

26. Under the Knight Specialty Policy, "autos" specifically described in Item Three of the Declarations are covered "autos," and by way of Policy Change No. 1, effective December 7, 2020, the Temporary Substitute Unit is a specifically described "auto" under the Knight Specialty Policy.

27. The Knight Specialty Policy's Motor Carrier Coverage Form, CA 00 20 11 20, states as follows:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

51078022.v1

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

…

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow…

   d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

   e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

…

51078022.v1

-7-

**The Accident**

28. On December 20, 2020, Josmir Quevedo Fernandez was operating the Temporary Substitute Auto in Illinois and was involved with an accident.

29. Freisman Cabrera Perez ("Plaintiff") was a passenger in the Temporary Substitute Auto and allegedly sustained injuries as a result of the accident.

**The Underlying Lawsuit**

30. On or about September 7, 2023, Plaintiff filed a complaint in the Lawsuit.

31. On or about July 23, 2024, Plaintiff filed a second amended complaint in the Lawsuit that named Ryder as a defendant. Annexed hereto as **Exhibit 3** is a true and accurate copy of Plaintiff's second amended complaint in the Lawsuit.

32. The second amended complaint alleged that Ryder owned the Temporary Substitute Unit, and that Ryder leased the Temporary Substitute Unit to Southcentral Lanes.

33. The second amended complaint further alleged that Quevedo-Fernandez was operating the Temporary Substitute Unit with the express knowledge and consent of Southcentral Lanes and Ryder at the time of the accident.

34. Count VII of the second amended complaint alleged that Ryder was vicariously liable for Quevedo-Fernandez's negligent operation of the Temporary Substitute Unit by virtue of the dangerous instrumentality doctrine.

35. Count VII of the second amended complaint alleged that Ryder owned the Temporary Substitute Auto, that the Southcentral Lanes TLSA required Southcentral Lanes' employees or agents to operate the Temporary Substitute Unit, and that the TLSA required Southcentral Lanes' drivers to comply with the Federal Motor Carrier Safety Act and its implementing regulations.

36. Count VII alleged that Ryder knew or should have known that the Temporary Substitute Auto did not have a functioning Electronic Logging Device and/or an operable restraint system in the sleeper berth.

37. Count VII further alleged that Ryder was negligent in failing to properly inspect, service and maintain the Temporary Substitute Auto, and that Ryder's alleged negligence proximately caused Plaintiff's injuries.

38. On September 25, 2024, Ryder tendered the Lawsuit to Knight Specialty and demanded that Knight Specialty defend and indemnify Ryder as an insured under the Knight Specialty Policy.

39. Knight Specialty did not formally or informally respond to Ryder's tender, despite several follow-up requests for Knight Specialty's tender response.

40. Knight Specialty's failure to accept Ryder's tender ceded control of Ryder's defense to Ryder and compelled Ryder to retain defense counsel to defend itself in the Lawsuit and incur defense costs that Knight Specialty has not reimbursed.

41. On December 17, 2024, Plaintiff filed a third amended complaint in the Lawsuit, which contained essentially the same factual allegations as the second amended complaint. Annexed hereto as **Exhibit 4** is a true and accurate copy of Plaintiff's third amended complaint in the Lawsuit.

42. Count VII of the third amended complaint alleged that Ryder was vicariously liable for Quevedo-Fernandez's negligent operation of the Temporary Substitute Unit by virtue of the dangerous instrumentality doctrine and/or to the extent that Ryder negligently entrusted, serviced and/or maintained the Temporary Substitute Auto.

43. Count VIII of the third amended complaint essentially repeated the same negligence allegations in Count VIII of the second amended complaint.

44. On January 15, 2025, Ryder tendered the third amended complaint in the Lawsuit to Knight Specialty and again demanded that Knight Specialty defend and indemnify Ryder as an insured under the Knight Specialty Policy.

45. Knight Specialty did not formally or informally respond to Ryder's tender, despite several follow-up requests for Knight Specialty's tender response.

46. Knight Specialty's failure to accept Ryder's tender ceded control of Ryder's defense to Ryder and compelled Ryder to retain defense counsel to defend itself in the Lawsuit and incur defense costs that Knight Specialty has not reimbursed.

**The Time-Limited Demand**

47. On February 3, 2025, Plaintiff's counsel made a time-limited demand to Ryder that expired on February 14, 2025.

48. On February 5, 2025, Ryder tendered Plaintiff's time-limited demand to Knight Specialty.

49. Ryder secured an extension of time to respond to the time-limited demand until February 28, 2025.

50. In the interim, Ryder pressed Knight Specialty for its coverage and settlement positions.

51. Knight Specialty did not provide its coverage or settlement positions or request additional information from Ryder.

52. By the February 28, 2025 demand expiration date, Knight Specialty still had not responded to the additional-insured tenders (pending for over six months) or time-limited demand tenders.

53. At 4:45 p.m. on February 28, 2025, Knight Specialty's coverage counsel advised Ryder that Knight Specialty "cannot accept or reject the tender from Ryder today" because it needed unspecified "additional factual information" to evaluate the tender. Knight Specialty purported to reserve its rights.

54. Knight Specialty's non-responsiveness ceded control of the Lawsuit to Ryder, and Ryder was compelled to enter into a reasonable settlement of Plaintiff's

-9-

claims against Ryder in the Lawsuit that Ryder has paid and Knight Specialty has not reimbursed.[1]

## FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT
## (DUTY TO DEFEND)

55. Ryder repeats and re-alleges the preceding paragraphs as if stated more fully in this paragraph.

56. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-sections 1.d. of the Who Is An Insured provision because it leased the Leased Unit and the Temporary Substitute Unit to Southcentral Lanes under written agreements that did not require Ryder to hold Southcentral Lanes harmless and the Temporary Substitute Unit was used in Southcentral Lanes' business as a "motor carrier" for hire.

57. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-sections 1.e. of the Who Is An Insured provision because the Lawsuit alleges that Ryder was vicariously liable for the conduct of Quevedo-Fernandez.

58. Pursuant to the terms of the Knight Specialty Policy, Knight Specialty had a duty to defend any "insured" against a "suit" seeking damages for "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

59. In the Lawsuit, Plaintiff alleges that he sustained bodily injury in the December 20, 2020 motor vehicle accident and that the accident resulted from the ownership, maintenance or use of the Temporary Substitute Unit, which by virtue of Policy Change No. 1, is a covered "auto" under the Knight Specialty Policy.

---

[1] While the settlement is confidential, the settlement amount exceeds the $75,000 amount-in-controversy requirement.

60. Ryder seeks a declaratory judgment that Knight Specialty had a duty to defend Ryder for the Lawsuit entitling Ryder to the payment and/or reimbursement of its defense costs for the Lawsuit.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT
## (DUTY TO DEFEND)

61. Ryder repeats and re-alleges the preceding paragraphs as if stated more fully in this paragraph.

62. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-sections 1.d. of the Who Is An Insured provision because it leased the Leased Unit and the Temporary Substitute Unit to Southcentral Lanes under written agreements that did not require Ryder to hold Southcentral Lanes harmless and the Temporary Substitute Unit was used in Southcentral Lanes' business as a "motor carrier" for hire.

63. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-sections 1.e. of the Who Is An Insured provision because the Lawsuit alleges that Ryder is vicariously liable for the conduct of Quevedo-Fernandez.

64. Pursuant to the terms of the Knight Specialty Policy, Knight Specialty had a duty to defend any "insured" against a "suit" seeking damages for "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

65. In the Lawsuit, Plaintiff alleges that he sustained bodily injury in the December 20, 2020 motor vehicle accident and that the accident resulted from the ownership, maintenance or use of the Temporary Substitute Unit, which by virtue of Policy Change No. 1, is a covered "auto" under the Knight Specialty Policy.

66. Ryder timely tendered its defense to Knight Specialty complied with all conditions precedent to coverage.

-12-

67. Pursuant to the terms of the Knight Specialty Policy, Knight Specialty had an obligation to defend Ryder as an insured under the Knight Specialty Policy for the Lawsuit and pay Ryder's defense costs.

68. Knight Specialty never responded to Ryder's tenders of the Lawsuit.

69. Knight Specialty's failure to defend Ryder for the Lawsuit constitutes a breach of its contractual obligations under the Knight Specialty Policy, and as a direct and proximate result of this breach, Ryder has sustained direct and indirect damages, including unpaid and/or unreimbursed defense costs incurred in connection with the Lawsuit.

### THIRD CAUSE OF ACTION – DECLARATORY JUDGMENT
### (DUTY TO INDEMNIFY)

70. Ryder repeats and re-alleges the preceding paragraphs as if stated more fully in this paragraph.

71. Pursuant to the terms of the Knight Specialty Policy, Knight Specialty had a duty "to pay all sums an 'insured' must pay as damages because of 'bodily injury' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

72. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-section 1.d. of the Who Is An Insured provision and is owed a defense for the Lawsuit.

73. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-section 1.e of the Who Is An Insured provision and is owed a defense for the Lawsuit.

74. Plaintiff sustained damages because of "bodily injury" covered by the Knight Specialty Policy that were caused by the December 20, 2020 motor vehicle accident.

75. Plaintiff's bodily injury damages were caused by an accident and resulted from the ownership, maintenance and/or use of the Temporary Substitute Unit, which was a covered auto under the Knight Specialty Policy.

76. For more than six months, Ryder repeatedly tendered the Lawsuit and the time-limited demand to Knight Specialty.

77. Knight Specialty did not respond for months, and when Knight Specialty did respond on the expiration date of the time-limited demand, it declined to accept or reject the tenders without any explanation, other than a supposed need for unidentified "additional factual information."

78. Knight Specialty's breach of the duty to defend ceded control of the Lawsuit to Ryder, and Ryder entered into a reasonable settlement, which Ryder has paid, and which Knight Specialty has not reimbursed.

79. Ryder seeks a declaratory judgment that Knight Specialty had a duty to indemnify Ryder for the Lawsuit entitling Ryder to the payment and/or reimbursement of the settlement Ryder was compelled to pay for the Lawsuit.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT
## (DUTY TO INDEMNIFY)

80. Ryder repeats and re-alleges the preceding paragraphs as if stated more fully in this paragraph.

81. Pursuant to the terms of the Knight Specialty Policy, Knight Specialty had a duty "to pay all sums an 'insured' must pay as damages because of 'bodily injury' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

82. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-section 1.d. of the Who Is An Insured provision and is owed a defense for the Lawsuit.

83. Pursuant to the terms of the Knight Specialty Policy, Ryder qualifies as an insured under Knight Specialty Policy under sub-section 1.e of the Who Is An Insured provision and is owed a defense for the Lawsuit.

84. Plaintiff sustained damages because of "bodily injury" covered by the Knight Specialty Policy that were caused by the December 20, 2020 motor vehicle accident.

85. Plaintiff's bodily injury damages were caused by an accident and resulted from the ownership, maintenance and/or use of the Temporary Substitute Unit, which was a covered auto under the Knight Specialty Policy.

86. For more than six months, Ryder repeatedly tendered the Lawsuit and the time-limited demand to Knight Specialty.

87. Knight Specialty did not respond to for months, and when Knight Specialty did respond on the expiration of the time-limited demand, it declined to accept or reject the tenders without any explanation, other than a supposed need for unidentified "additional factual information."

88. Knight Specialty's breach of the duty to defend ceded control of the Lawsuit to Ryder, and Ryder entered into a reasonable settlement, which Ryder has paid, and which Knight Specialty has not reimbursed.

89. Knight Specialty's failure to indemnity Ryder for the Lawsuit constitutes a breach of its contractual obligations under the Knight Specialty Policy, and as a direct and proximate result of this breach, Ryder has sustained direct and indirect damages, including unpaid and/or unreimbursed settlement costs incurred in connection with the Lawsuit.

### FIFTH CAUSE OF ACTION – BREACH OF CONTRACT (ESTOPPEL)

90. Ryder repeats and re-alleges the preceding paragraphs as if stated more fully in this paragraph.

91. On or about July 23, 2024, Plaintiff filed a second amended complaint in the Lawsuit that named Ryder as a defendant.

51078022.v1

92. On September 25, 2024, Ryder tendered the Lawsuit to Knight Specialty and demanded that Knight Specialty defend and indemnify Ryder as an insured under the Knight Specialty Policy.

93. Knight Specialty did not formally or informally respond to Ryder's tender, despite several follow-up requests for Knight Specialty's tender response.

94. On December 17, 2024, Plaintiff filed a third amended complaint in the Lawsuit, which contained essentially the same factual allegations as the second amended complaint.

95. On January 15, 2025, Ryder tendered the amended complaint in the Lawsuit to Knight Specialty and again demanded that Knight Specialty defend and indemnify Ryder as an insured under the Knight Specialty Policy.

96. Knight Specialty did not formally or informally respond to Ryder's tender, despite several follow-up requests for Knight Specialty's tender response.

97. On February 3, 2025, Plaintiff's counsel made a time-limited demand to Ryder that was set to expire on February 14, 2025.

98. On February 5, 2025, Ryder tendered Plaintiff's time-limited demand to Knight Specialty.

99. Ryder secured an extension of time to respond to the time-limited demand until February 28, 2025.

100. Knight Specialty did not respond to Ryder's tender of the time-limited demand within the demand period.

101. On the literal eve of the time-limited demand expiration date, Knight Specialty's coverage counsel advised Ryder that Knight Specialty "cannot accept or reject the tender from Ryder today" because it needed unspecified "additional factual information" to evaluate the tender.

102. In the face of the time-limited demand, Knight Specialty's unreasonable delay and failure to respond to Ryder's tenders substantially

51078022.v1

prejudiced Ryder, and therefore, Knight Specialty is estopped from denying coverage for Ryder's settlement of the Plaintiff's claims against Ryder in the Lawsuit.

**WHEREFORE**, Ryder demands judgment as follows:

A.   Declaring that the Knight Specialty Policy obligated Knight Specialty to defend Ryder for the claims in the Lawsuit;

B.   Declaring that the Knight Specialty Policy obligated Knight Specialty to indemnify Ryder for the claims in the Lawsuit;

C.   Awarding breach-of-contract damages for Knight Specialty's failure to defend Ryder for the claims in the Lawsuit;

D.   Awarding breach-of-contract damages for Knight Specialty's failure to indemnify Ryder for the claims in the Lawsuit and settle the Lawsuit on Ryder's behalf;

F.   Awarding attorney's fees pursuant to Fla. Stat. § 86.121.

G.   For such other and further relief as this Court may deem just, proper and equitable, including interest, costs and attorneys' fees.

Dated:   April 29, 2025
         West Palm Beach, Florida

By:   */s/ Dustin C. Blumenthal*
      Dustin C. Blumenthal
      Florida Bar No. 083799
      E-mail: dblumenthal@goldbergsegalla.com
      **GOLDBERG SEGALLA LLP**
      500 S. Australian Ave., Ste. 1000
      West Palm Beach, FL 33401
      Tel:   (561) 618-4485
      Fax:   (561) 618-4549

      *Counsel for Ryder Truck Rental, Inc.*